UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAPOLEON WHITE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-2692-B |
| | § | |
| PREMIUM VELOCITY AUTO LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Premium Velocity Auto LLC ("PVA")'s Motion for Summary Judgment (Doc. 17). For the following reasons, the Court **DENIES** PVA's Motion.

### I.

### BACKGROUND

This is a workplace discrimination suit brought by Plaintiff Napoleon White against his former employer, PVA. PVA is a Jiffy Lube franchisee that offers various auto maintenance and repair services. White worked at several Jiffy Lube locations, most recently as a store manager for a PVA-owned location, until he was terminated in December 2023. Following his termination, White instituted the present action.

White is a Black man. Doc. 25, Pl.'s Resp. Br. ¶ 22. During White's employment with PVA, several employees made race-based comments and jokes directed at him. Around January 2023, when White told a PVA acquisition manager that he could no longer work Saturdays due to his new faith, the manager laughed and "made light of" the fact that White, as "a black man," could become "a Seventh Day Adventist." Doc. 26, White Dep., 75:7-17. White contends that other PVA

employees "from the top to the bottom" frequently made similar race-based jokes, such as calling White "an Oreo" or quipping that "Napoleon ain't white and all that kind of stuff." *Id.* at 82:17-21.

In September 2023, White had an accident resulting in injury at work and filed a workers' compensation claim. *See* Doc. 18, Mot. Br. ¶ 2. White also took leave under the Family and Medical Leave Act ("FMLA"). *Id.* ¶ 3; *see* 29 U.S.C. § 2601 *et seq.* PVA management was internally skeptical of White's injury, *see* Doc. 25, Pl.'s Resp. Br. ¶¶ 7-9, but nevertheless, White received a full twelve weeks of FMLA leave, *see* Doc. 18, Mot. Br. ¶¶ 2-4; Doc. 25, Pl.'s Resp. Br. ¶¶ 3, 14.

In December 2023, as White's FMLA leave was about to expire, White spoke with PVA management about his return options. *See* Doc. 18, Mot. Br. ¶ 4; Doc. 25, Pl.'s Resp. Br. ¶ 10. The parties dispute the substance of those discussions.

Per White's deposition testimony, White informed Don Cochran, a PVA district manager, that while he was "still in a little pain" and "would have to take . . . a break" on occasion, he was "ready to come back to work." Doc. 26, White Dep., 51:11-25, 52:1-7. According to White, despite his injury, he *did not* tell Cochran or anyone else at PVA that he would not be able to perform all his job duties upon return. *Id.* at 53:6-10. Cochran then told White he would be moved to another shop that could "accommodate" him. *Id.* at 51:12-14. White's allegations in his complaint vary slightly: he alleged that when asked if he was going to return after his leave expired, White told PVA "that, although his movement was limited, he could come back and perform his managerial duties." Doc. 1, Compl. ¶ 12. PVA then informed him that "because he couldn't come back fully, he would have to reapply at a later date." *Id.*

Provided through the deposition testimony of William McInnes, PVA's account of its return discussions with White is remarkably different. McInnes is a Human Resources manager with PVA

who was directly involved in White's termination. *See* Doc. 25, Pl.'s Resp. Br. ¶ 15. McInnes testifies that shortly before White's FMLA leave expired, White informed another PVA employee (but not Cochran) that he "could not return to work" at the expiration of his leave. *See* Doc. 26, McInnes Dep., 11:15-25, 13:6-13. Accordingly, PVA terminated White in consistency with their own leave policy, which permitted 12 weeks of leave (as required by the FMLA) but did "not accommodate past that," unless the employee could return "in some capacity." *Id.* at 11:15-17, 13:6-13.

In short, there is a fact dispute as to whether White informed PVA that he could return to work and fulfill all his job duties. There is no dispute that White, shortly before his FMLA leave expired, informed PVA that he was still in pain, had limited mobility, and would need to take breaks.

White brought the present action in October 2024. He asserts causes of action for racial discrimination under 42 U.S.C. § 1981, FMLA interference and retaliation under 29 U.S.C. § 2615, and workers' compensation retaliation under Texas Labor Code section 451.001. Doc. 1, Compl. ¶¶ 17-27. PVA now moves for summary judgment on all claims, contending that White lacks sufficient supporting evidence for each claim. *See* Doc. 18, Mot. Br., 1.

The Court considers the Motion below.

## II.

## LEGAL STANDARD

A. *Summary Judgment Standard*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). On a motion for summary judgment, the burden is on the

movant to prove that no genuine dispute exists as to a material fact. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine dispute exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002). When the nonmovant would bear the burden of proof on an issue at trial, the movant can secure summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (other citations omitted). A non-moving party with the burden of proof at trial must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). In such cases, the non-moving party's proffered evidence "must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *Id.* (citations omitted).

Finally, the evidence that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citation omitted).

B. *The* McDonnell Douglas *Burden-Shifting Framework*

When employees sue their employers for workplace discrimination under federal anti-discrimination statutes, those plaintiff-employees have the burden at trial to prove that intentional discrimination occurred. This can be done with direct evidence that the employer took adverse action against the employee based on a protected characteristic or status, or through circumstantial evidence that tends to indicate the same. *See Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437, 442 (5th Cir. 2018). At the summary judgment stage, when plaintiffs lack direct evidence of intentional discrimination but instead present circumstantial evidence, courts have long relied on the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022) (applying *McDonnell Douglas* burden-shifting framework to racial discrimination claim brought under § 1981) (citing *McDonnell Douglas*, 411 U.S. at 802-04).

Under that framework, the plaintiff-employee must first set forth evidence to support each element of his "prima facie case of discrimination." *Id.* (citation omitted). If the plaintiff is successful, the defendant-employer must then respond with a "legitimate, nondiscriminatory reason" for terminating the plaintiff. *Id.* (citation omitted). The defendant's burden "is one of production, not persuasion, and it involves no credibility assessment." *Royall v. Enter. Prods. Co.*, No. 21-40119, 2022 WL 263404, at *2 (5th Cir. Jan. 26, 2022) (internal quotation marks and citation omitted). If the defendant can furnish such a reason, the burden shifts back to the plaintiff to counter with "substantial evidence" that the given reason is pretextual. *Owens*, 33 F.4th at 825 (citing *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021) (noting that once the defendant produces a legitimate, nondiscriminatory basis for termination, a plaintiff's "presumption of discrimination disappears,"

even when the plaintiff is the nonmoving party opposing summary judgment)). Substantial evidence is evidence "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Watkins*, 997 F.3d at 283 (citation omitted).

In resolving § 1981 claims at the summary judgment stage, Courts apply the *McDonnell Douglas* burden-shifting framework. *See Comcast Corp. v. Nat.'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340 (2020); *Owens*, 33 F.4th at 825.

The Fifth Circuit has at times deviated from *McDonnell Douglas* and applied a lesser "mixed-motive" framework to FMLA retaliation claims at the summary judgment stage. *See, e.g., Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (holding that FMLA retaliation plaintiffs can survive summary judgment if they concede the truth of the employer's stated, legitimate reason but also raise circumstantial evidence that FMLA retaliation was a "motivating factor"—even if not the but-for cause of termination). But such precedents have since been called into serious question. *See Lindsey v. Bio Med. Applications of La., LLC*, 9 F.4th 317, 325 (5th Cir. 2021) (calling into question but not deciding "whether a mixed-motive causation standard is *ever* proper for FMLA retaliation claims" (citation omitted and emphasis added)); *see Adams v. Mem'l Hermann*, 973 F.3d 343, 353 (5th Cir. 2020) (noting that Supreme Court decisions after *Richardson* "place[d] in serious doubt the viability of [the mixed-motive] standard as applied to retaliation claims brought under the FMLA"). And importantly, neither party to this action argues that the mixed-motive standard should apply to White's FMLA retaliation claim. While White indirectly cites *Richardson* in his brief, he only describes the traditional *McDonnell Douglass* framework and makes no mention of the mixed-motive analysis. *See* Doc. 25, Pl.'s Resp. Br. ¶ 34. In response to PVA's asserted non-retaliatory basis for termination, White only addresses whether that reason is pretextual. *See id.* ¶ 40. He does *not*

concede the truth of PVA's asserted reason and argue instead that FMLA discrimination was another motivating factor. Absent any argument for a mixed-motive analysis, the Court will apply only the *McDonnell Douglas* framework to White's FMLA retaliation claim. *See Decou-Snowton v. Jefferson Par.*, No. 24-30079, 2024 WL 4879466, at *4 & n.2 (5th Cir. Nov. 25, 2024) (declining to apply a mixed-motive framework, instead applying *McDonnell Douglas*, where the plaintiff failed to raise any mixed-motive argument).

## III.

## ANALYSIS

The Court first addresses White's § 1981 claim. Because White makes a prima facie case of racial discrimination and creates a fact issue on PVA's asserted non-discriminatory reason for termination, the Court **DENIES** summary judgment on that claim. The Court next addresses White's FMLA retaliation and interference claims. Because White makes a prima facie case for each claim and creates a fact issue on PVA's asserted non-discriminatory reason for his termination, the Court **DENIES** summary judgment on those claims. Finally, the Court addresses White's Texas workers' compensation retaliation claim. As with White's other claims, White makes a prima facie case and creates a fact issue as to PVA's asserted non-discriminatory reason for termination. The Court **DENIES** summary judgment on that claim. All claims will proceed to trial.

A.   *The Court Denies Summary Judgment for PVA on White's § 1981 Claim.*

Under § 1981, it is unlawful to terminate an employee because of his race. *Owens*, 33 F.4th at 825. White does not present direct evidence of discrimination. Thus, to show a violation of § 1981, he must satisfy the *McDonnell Douglas* burden-shifting framework. *See id.* (citing *McDonnell Douglas*, 411 U.S. at 802-04) (other citation omitted).

1. <u>White Established a Prima Facie Case of Discrimination.</u>

To make out a prima facie case of discrimination, White must bring forth evidence (1) that he belongs to a protected group, (2) that he was qualified for the position at issue, (3) that he suffered an adverse employment action, and (4) that "[he] was replaced by someone outside of [his] protected group or a similarly situated employee outside of [his] protected group was treated more favorably." *Owens*, 33 F.4th at 825. White satisfies the first, third, and fourth elements without issue. White is a Black man, PVA terminated his employment, and PVA replaced him with a Hispanic, non-Black, individual.[1] *See* Doc. 25, Pl.'s Resp. Br. ¶¶ 6, 22.

A factual dispute exists as to the second element: whether White was qualified for the position at issue. The day before White's FMLA leave expired, White informed PVA that his movement was still limited due to his prior injury. *See* Doc. 18, Mot., 2; Doc. 1, Compl. ¶ 12. According to PVA, White informed it that his injuries would prevent him from returning to work, and that inability to work was the basis for termination. *See* Doc. 26, McInnes Dep., 11:20-21, 13:6-13. White disputes this, asserting by deposition that while he told PVA he was still in some pain, he also told it that he was ready to return and would be able to perform all of his job duties. Doc. 26, White Dep., 51:11-12, 52:1-12, 52:25, 53:1-25. In his Complaint, White alleged that he told PVA that "although his movement was limited, he could come back and perform his managerial duties." Doc. 1, Compl. ¶ 12. PVA allegedly responded that "because [White] couldn't come back fully, he would have to reapply at a later date." *Id.* In short, while some fact dispute remains on precisely *what* White told PVA, White points to sufficient evidence to raise a fact dispute on the second element

---

[1] While PVA appears to challenge the fourth element as well, it fails to address that White's replacement was outside White's protected group. *See* Doc. 18, Mot. Br. ¶¶ 12-13.

of his prima facie claim. Accordingly, White meets his burden to raise facts to support each element of his prima facie claim.

2. <u>PVA Produced a Legitimate, Nondiscriminatory Reason for Termination.</u>

Now confronted with White's prima facie case, PVA must give a legitimate, nondiscriminatory reason for White's termination. This burden is "slight." *Tiemeyer v. Quality Publ'g, Inc.*, 144 F. Supp. 2d 727, 734 (S.D. Tex. 2001). PVA "need only produce some evidence that it discharged [White] for a nondiscriminatory purpose, but it need not persuade the Court that it was actually motivated by its proffered reason." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (recognizing that the employer had a burden of production, not persuasion)) (other citations omitted).

PVA contends that it terminated White because management believed White could not perform his job duties. *See* Doc. 18, Mot. Br. ¶ 16. By White's own deposition testimony, while he told PVA he could return to work, he also told it he was still in some residual pain. Doc. 26, White Dep., 51:11-12, 52:25, 53:1-25. Also, White is bound by admissions made in his own pleading— namely that White told PVA that his movement was limited and that White's inability to "come back fully" was PVA's *stated* basis for the termination. *See* Doc. 1, Compl. ¶ 12; *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 391 (5th Cir. 2013) ("[A] party is bound by admissions made in his pleadings, such that he cannot present evidence contradicting those pleadings for the purpose of defeating a summary judgment motion." (citation omitted)). Thus, PVA's asserted basis for termination has evidentiary support. Having presented a legitimate, nondiscriminatory reason for termination, PVA meets its burden of production.

3. <u>White Raises a Fact Issue of Pretext.</u>

In the face of a legitimate, nondiscriminatory reason for termination, White's claim cannot survive summary judgment absent "substantial evidence" of pretext—i.e., evidence "of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *See Owens*, 33 F.4th at 826 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)). In other words, where PVA claims White was terminated because it believed White could no longer carry out his job duties, White must show that "reasonable minds could disagree that [this was], indeed, the reason[] for [his] discharge." *See id.* (citation omitted).

But White's burden to raise a fact issue of pretext does not end there. His proffered evidence of pretext must be sufficient for a jury to infer discrimination was the true cause—not merely that the employer's explanation was "unreasonable." *Id.* "Employers are 'entitled to be unreasonable' in terminating their employees 'so long as [they] do[] not act with discriminatory animus.'" *Id.* (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). As the Supreme Court has noted, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. Nevertheless, evidence that a defendant's explanation is "unworthy of credence . . . may be quite persuasive" when it eliminates the employer's stated justification and discrimination "may well be the most likely alternative explanation." *Id.* at 147. "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148.

White's principal argument for pretext challenges PVA's asserted basis for his termination. White claims, citing his own deposition testimony, that he told PVA he could return to work and perform his employment duties.[2] *See* Doc. 25, Pl.'s Resp. Br. ¶ 40. A reasonable jury, confronted with this testimony, could reject PVA's proffered explanation that it believed White could not perform those duties. *See Reeves*, 530 U.S. at 148. Nevertheless, this alone does not raise a fact issue of pretext unless White's other evidence would allow a "rational factfinder [to] conclude that the action was discriminatory." *See id.* Because PVA replaced White with a non-Black employee, a rational juror could find that PVA acted out of racial animus.[3]

B.  *The Court Denies Summary Judgment for PVA on White's FMLA Interference and Retaliation Claims.*

Section 2615(a)(1) of the FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." Section 2615(a)(2) of the FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual" who exercises his or her rights under the FMLA. Claims brought under § 2615(a)(1) are typically called FMLA interference claims, while claims brought under § 2615(a)(2) are known as FMLA retaliation claims. *See, e.g.*, *Jackson v. BNSF Ry. Co.*, 751 F. App'x 509, 511 (5th Cir. 2018). In his Complaint, White identifies his claim as brought under § 2615(a)(1)—an FMLA interference claim. *See* Doc. 1, Compl. ¶ 26. However, White, in opposition

---

[2] While White's argument here is found in his section addressing the FMLA claim, it is equally applicable to the § 1981 analysis as both apply the *McDonnell Douglas* burden-shifting framework. White neglects to separately discuss pretext in his § 1981 analysis.

[3] White also argues that he and other Black employees were terminated after going on FMLA leave when employees of other races were not and that he experienced overt racism through racist jokes from coworkers including upper management. *See* Doc. 25, Pl.'s Resp. Br. ¶ 32. Because White already creates a fact issue of pretext with evidence that PVA replaced him with a non-Black employee and that PVA's proffered non-discriminatory reason for White's termination could be false, the Court need not consider these other arguments.

to PVA's Motion, appears to argue both for an interference and retaliation claim. *See* Doc. 25, Pl.'s Resp. Br. ¶ 34. Accordingly, the Court construes White's FMLA claim as two separate claims for FMLA interference and FMLA retaliation.

1. <u>White Makes a Prima Facie Case for FMLA Interference.</u>

Unlike White's FMLA retaliation claim discussed below, the *McDonnell Douglas* framework does not apply to FMLA interference claims where the plaintiff asserts the denial of an entitlement. This is because interference claims do not depend on any "wrongful intent from the employer." *See Jackson*, 751 F. App'x at 511 (citations omitted). Thus, a non-moving plaintiff asserting FMLA interference will survive summary judgment if he raises facts that support each element of his prima facie claim. *See Martin v. Penske Logistics*, 736 F. Supp. 3d 437, 453 (N.D. Tex. 2024) (Boyle, J.).

A prima facie FMLA interference claim, sometimes called an entitlement claim, requires White to show that "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Id.* at 448 (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)). The benefit at issue here is "an employee's right to return to work following a leave of absence on the same terms and conditions of employment as existed prior to having taken FMLA leave." *See id.* at 453 (citations omitted). White contends that PVA denied his FMLA right to be reinstated to his previous position or an equivalent position upon return. *See* Doc. 25, Pl.'s Resp. Br. ¶ 36 (citing *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021)). Because the *McDonnell Douglas* framework does not apply,

White's FMLA interference claim survives summary judgment if he raises facts to support each element of the prima facie case.

The first four elements of White's FMLA interference claim are satisfied and undisputed. Accordingly, the Court's analysis focuses on the fifth element: whether White can raise a material fact dispute that he was denied FMLA benefits to which he was entitled. "Under the FMLA, an employee is only entitled to those rights to which he would have been entitled had he not taken FMLA leave." *Hester*, 11 F.4th at 306 (citation omitted). To show a violation of his right to reinstatement, White must show that he was "actually . . . entitled to the position" when terminated. *Id.* (citation omitted). If White's right to the employment position was already extinguished "for legitimate reasons unrelated to his efforts to secure FMLA leave," terminating him is not a violation of the FMLA. *Id.* (citation omitted).

If an employee cannot "perform the essential functions of his job" due to a physical condition, the employee "has no right to restoration . . . under the FMLA." *Juarez v. City of Big Spring*, No. 1:17-CV-00160-BU, 2020 WL 13607893, at *17 (N.D. Tex. Nov. 30, 2020) (Parker, Mag. J.) (quoting 29 C.F.R. § 825.216(c)). However, "if an employee establishes a fact issue as to his ability to perform the essential functions in question, summary judgment on an entitlement claim under the FMLA . . . is improper." *Id.* (internal quotation marks and citation omitted). White was not denied reinstatement until after his FMLA leave "was exhausted" and he informed PVA that he could return to work but would still be "in a little pain and may need to take a few breaks while there." Doc. 25, Pl.'s Resp. Br. ¶¶ 10, 14. As discussed above in Part III.A.1, there is a live fact dispute as to what White told PVA about his ability to return to work, and thereby whether White could indeed perform the essential functions of his job. Because White raises a genuine dispute as

to whether he could physically perform his essential job functions, the Court cannot conclude whether he was entitled to reinstatement. *See Juarez*, 2020 WL 13607893, at *17. White's FMLA interference claim must therefore proceed to trial.

  2. <u>White Makes a Prima Facie Case for FMLA Retaliation and Raises a Fact Dispute on PVA's Asserted Non-Retaliatory Explanation.</u>

A prima facie FMLA retaliation claim requires a plaintiff to show that he "(1) 'was protected under the FMLA;' (2) 'suffered an adverse employment action;' and (3) 'was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.'" *See Martin*, 736 F. Supp. 3d at 454 (quoting *Murillo v. City of Granbury*, No. 22-11163, 2023 WL 6393191, at *3 (5th Cir. Oct. 2, 2023)).

White provides undisputed evidence to support the first two elements—PVA terminated White shortly after his FMLA leave expired, *see* Doc. 25, Pl.'s Resp. Br. ¶ 14—and raises a genuine dispute of fact on the third element. The third element requires White to show a "causal link between the protected activity and the discharge." *Richardson*, 434 F.3d at 332. When evaluating this causal link, courts consider "the temporal proximity between the FMLA leave, and the termination." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006) (quotation marks and citation omitted). Generally, "close proximity" in time between the FMLA leave and the adverse action is enough to establish the necessary causal connection for a prima facie retaliation claim. *See id.* (citation omitted).

White argues here that he was terminated as retaliation for taking FMLA leave. *See* Doc. 25, Pl.'s Resp. Br., 5. While neither party provides the exact date, White was informed of his termination shortly after his December 16, 2023, call with PVA management. *See* Doc. 18, Mot. Br., 2; Doc. 25, Pl.'s Resp. Br. ¶¶ 10, 14. White's FMLA leave expired on December 17, 2023. *See* Doc. 18, Mot.

Br., 2. Because White's termination was temporally proximate to his FMLA leave, he raises a fact issue that but for his FMLA leave, he would not have been terminated. *See Mauder*, 446 F.3d at 583. Thus, White provides sufficient evidence to assert a prima facie claim of FMLA retaliation.

In evaluating the remainder of the *McDonnell Douglas* analysis, the same reasoning articulated in Part III.A.2 and III.A.3 above applies to White's FMLA retaliation claim. PVA produces a legitimate, nondiscriminatory reason for White's termination: it believed White could not perform his job duties. But White challenges PVA's asserted basis for his termination, asserting deposition testimony that White told PVA that he could return to work and perform his duties. *See* Doc. 25, Pl.'s Resp. Br. ¶ 40. A reasonable jury, confronted with these facts, could reject PVA's proffered explanation. *See Reeves*, 530 U.S. at 148. This alone does not raise a fact issue of pretext unless White's other evidence would allow a "rational factfinder [to] conclude" that PVA acted with a retaliatory motive. *See id.* But the temporal proximity of White's FMLA leave and subsequent termination, coupled with PVA management's documented skepticism of White's injury, *see* Doc. 25, Pl.'s Resp. Br. ¶¶ 7-9, are enough for a rational juror to find that PVA acted in retaliation.

Accordingly, White raises a fact dispute that PVA's reason for his termination was pretextual. White's FMLA retaliation claim must proceed to trial.

C.   *The Court Denies Summary Judgment for PVA on White's Workers' Compensation Retaliation Claim.*[4]

Section 451.001 of the Texas Labor Code precludes an employer from discharging or otherwise discriminating against an employee "because the employee has . . . filed a workers'

---

[4] PVA contends that this Court has no subject-matter jurisdiction to resolve White's Texas workers' compensation retaliation claim "as a matter of fundamental Constitutional law." *See* Doc. 18, Mot. Br. ¶¶ 20-22. PVA is mistaken. The Court has supplemental jurisdiction to resolve state law claims that are part of the "same case or controversy" as claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a).

compensation claim in good faith." § 451.001(1). Texas courts employ their own burden-shifting framework to evaluate such claims at the summary judgment stage.[5] The employee must first allege a "prima facie case . . . establishing a causal link between the termination and the filing of a claim for workers' compensation benefits." *Phillips v. SACHEM, Inc.*, No. 03-13-00346-CV, 2014 WL 7464035, at *2 (Tex. App.—Austin Dec. 31, 2014, no pet.) (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450-51 (Tex. 1996)) (other citation omitted). "[T]he standard of causation . . . should be that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Cont'l Coffee*, 937 S.W.2d at 450 (quoting *Tex. Dep't of Hum. Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995)). As with the federal discrimination claims, White's workers' compensation retaliation claim requires a showing that "but for" his workers' compensation claim, he would not have been terminated. *See id.*

A plaintiff asserting workers' compensation retaliation may rely on circumstantial evidence to show causation, including "for example, an employer's expression of a negative attitude toward the employee's injury, an employer's discriminatory treatment of the employee compared with similarly situated employees, an employer's failure to adhere to established company policy, and evidence that the employer's stated reason for termination was false." *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015). While these factors may be useful in evaluating White's claims, they "do not replace the but-for standard for causation—that the employer's prohibited action would not have occurred when it did absent the employee's protected conduct." *Sanchez-Rolon v. Pactiv, LLC*,

---

And the Court has original jurisdiction over White's § 1981 and FMLA claims which arise under federal statutes. *See* 28 U.S.C. § 1331.
[5] "[T]he question of who sustains the burden of proof is substantive and . . . is therefore controlled by state law." *See Chevron Oronite Co., LLC v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 232 (5th Cir. 2020) (quoting *Benavides v. Mut. Life Ins. Co.*, 516 F.2d 393, 400 (5th Cir. 1975)).

-16-

No. 03-23-00031-CV, 2024 WL 5286331, at *7 (Tex. App.—Austin Dec. 31, 2024, no pet.) (citation omitted). Indeed "[t]he factors may be more helpful in some cases and less in others, and some of the factors may actually be a distraction." *See id.* (brackets, quotation marks, and citation omitted). Thus, the Court considers but does not strictly adhere to a particular set of factors.

If the plaintiff can establish a prima facie case, the burden shifts to the employer to rebut the alleged discrimination by showing a "legitimate reason for the employee's termination." *Phillips*, 2014 WL 7464035, at *3 (citation omitted).[6] If the employer demonstrates such a reason, the burden shifts back to the employee "either to present evidence raising a fact issue on whether the reason for termination was a pretext for the discrimination or to challenge the employer's summary-judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason." *Id.* (citations omitted); *see Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 68 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

1. <u>White Establishes a Prima Facie Case of Workers' Compensation Retaliation Under Texas Law.</u>

To demonstrate his prima facie case, White must raise evidence supporting a causal link between termination and the filing of a claim for workers' compensation benefits. *See Cont'l Coffee*, 937 S.W.2d at 450. To meet his burden, White contends (1) that PVA management doubted the legitimacy of his injury, (2) that PVA failed to adhere to its established company policies regarding

---

[6] Unlike *McDonnell Douglas*, once the plaintiff makes out its prima facie case, Texas's burden-shifting framework appears to treat the employer's proffered nondiscriminatory reason as an affirmative defense on which the employer bears the final burden of persuasion. *Contrast Comcast*, 589 U.S. at 340 ("Under *McDonnell Douglas*'s terms . . . only the burden of production ever shifts to the defendant, never the burden of persuasion."), *with Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.) (holding that employee can survive summary judgment if "employer's summary judgment evidence . . . fail[s] to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason" (citation omitted)).

FMLA leave exhaustion, (3) that PVA treated him differently than other similarly situated employees who were able to return at an earlier date, and (4) that PVA's stated reason for his termination was false. *See* Doc. 25, Pl.'s Resp. Br. ¶¶ 53-56. The Court addresses each contention separately.

First, there is some evidence that PVA's management doubted the legitimacy of White's injury. *Id.* ¶ 53. PVA's own management acknowledged as much. *See id.* ¶¶ 7-9. However, an employer may contest the cause of an alleged on-the-job injury and the compensability of those injuries without fearing a workers' compensation retaliation suit. *See Cont'l Coffee*, 937 S.W.2d at 452. Without more, this evidence has minimal implications on White's causation requirement.

Second, White points to PVA's policy that "after an employee's FMLA leave [was] exhausted" the employee would be permitted to return and accommodated if they could "return in some capacity." *See id.* ¶ 54; Doc. 26, McInnes Dep., 13:10-13. White argues that by failing to accommodate him despite his ability to return, PVA failed to adhere to its own policies. Doc. 25, Pl.'s Resp. Br. ¶ 54. As already noted, the parties disagree on whether White informed PVA that he was able to return and fulfill his employment duties. Accordingly, this evidence, taken in the light most favorable to White as the non-moving party, tends to support or raise a fact dispute of a causal link.

Third, White argues that he was treated differently than similarly situated employees who did not seek workers' compensation. Doc. 25, Pl.'s Resp. Br. ¶ 55. Specifically, White points to PVA management's statement that employees who are able to return to work after 12 weeks of leave are permitted to return to work, while those who are unable to return at that time are not. *See id.* But "termination pursuant to the uniform enforcement of a reasonable absence-control policy does not

constitute retaliatory discharge." *Kingsaire*, 477 S.W.3d at 312 (citation modified) (quoting *Cazarez*, 937 S.W.2d at 451). Accordingly, this evidence does not support a causal link.

Fourth, White contends again that PVA's stated reason for termination was false. Doc. 25, Pl.'s Resp. Br. ¶ 56. Once again, the parties disagree on whether White informed PVA that he would be able to come back and fulfill his employment duties. Accordingly, this evidence, taken in the light most favorable to White as the non-moving party, tends to support a causal link.

Taken together, White raises sufficient evidence to create an issue of material fact as to whether his workers' compensation request was causally related to his subsequent termination. White thus establishes a prima facie claim of workers' compensation retaliation.

2. <u>PVA Presents a Nondiscriminatory Reason for White's Termination, but White Raises a Material Fact Dispute that PVA's Reason is Not Legitimate.</u>

White having raised disputed facts that would support his prima facie claim, the burden shifts to PVA to present a legitimate reason for White's termination. *See Phillips*, 2014 WL 7464035, at *3. As the Court has already addressed in Part III.A.2, PVA presents a reason: it believed White could not return and fulfill his employment duties.

The burden thus shifts back to White to show pretext, or "to challenge the employer's summary-judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason." *Phillips*, 2014 WL 7464035, at *3. As already noted, the parties dispute whether White informed PVA that he could return to work. White testified that before his FMLA leave expired, he informed PVA that although in some pain, he could return and fulfill his employment obligations. Doc. 26, White Dep., 51:11-12, 52:24-25, 53:1-25. Accordingly, White presents summary judgment evidence to dispute PVA's nondiscriminatory reason for his

termination. This fact dispute, based on Texas's burden shifting framework, precludes summary judgment for PVA.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** PVA's Motion for Summary Judgment (Doc. 17).

**SO ORDERED.**

**SIGNED: March 2, 2026**.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE